## No. 3917.

JEAN BERTHIN ET AL. VS. CRESCENT CITY LIVE-STOCK-LANDING AND SLAUGHTER-HOUSE COMPANY, AND SAID COMPANY VS. F. FRELOT & CO. ET AL. CONSOLIDATED FOR TRIAL IN THIS COURT.

Considering sections one, three, four, five, of act 118 of the acts of 1869, which statute creates the defendant company, and confers all the rights and franchises it enjoys, and considering that part of the title of the act which declares one of its effects to be, " to locate the stock-landing and slaughter-houses," the conclusion is, that the location of stock-landings and slaughter-houses contemplated by this statute was a permanent and not a temporary location; that the corporation had no authority to move the grand slaughter-house which it erected, pursuant to the third section of this act, from the right bank to the left bank of the river; that while it has the right to establish as many slaughter-houses as may be necessary, the corporation, having located and established the grand slaughter-house required, as a condition precedent to the enjoyment of the franchises conferred by said act No. 118, had no right to close it or remove it to another locality, because it was a lawful place for plaintiff to pursue his occupation, and defendant has no right to close it and compel him to go to another place.

After selecting this locality, and compelling the butchers to repair to it, the defendant, in the absence of an express power in the statute, will not be permitted to compel them to discontinue their business at this place, and follow the corporation to such other locality as its judgment or caprice may dictate. The intention of the statute was not to confer this arbitrary power upon the corporation. Its main object was to protect the health of the city of New Orleans by requiring the slaughtering of animals to be done within the designated limits and at one or more slaughter-houses for convenience of inspection by the proper officer; and the corporation was invested with certain franchises, provided it located, erected, and opened to public use by the first day of June, 1869, a grand slaughter-house of sufficient capacity to accommodate all butchers, and in which to slaughter five hundred animals per day. This slaughter-house the statute clearly requires to be kept open; and the plaintiff was entitled to the injunction which he sued out in the court below.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble, J. E. K. Washington, Cotton & Levy, William Grant, E. T. & E. J. Fellowes,* and *S. Belden,* for plaintiffs and appellants in the cases of Berthin et al. vs. Slaughter-House Company. *Semmes & Mott, John Ray,*

and *A. Voorhies,* for defendant and appellant. *Semmes & Mott,* for plaintiff in the case of Slaughter-House vs. Frelot et al., one of the consolidated cases. *S. Belden, E. K. Washington,* and *Cotton & Levy,* for defendants.

WYLY, J. Plaintiff alleges that he is by occupation a butcher and is engaged in slaughtering animals for food in the parishes of Orleans, Jefferson, and St. Bernard; that by virtue of act 118 of the acts of 1869, known as the Slaughter-House Act, petitioner and all others engaged in slaughtering animals in said parishes were required under penalty to slaughter at such place as might be located by the Slaughter-House Company under the requirements and restrictions of said law; that said company located their stock-landing and slaughter-house on the right bank of the Mississippi river in the parish of Orleans, below the present depot of Morgan's Opelousas and Texas Railroad; that said company intended to have completed said stock-landing and slaughter-house on or before the first of June, 1869, and at said date of its pretended completion required the slaughtering of all animals intended for food in the parishes of Orleans, Jefferson, and St. Bernard to be done at said place from said date.

Petitioner represents that in obedience to law he did his slaughtering in said place; that he is vested by law with the right to continue his business of slaughtering upon the site or place located by said company, on the right bank of the river as aforesaid; that said company has removed many things necessary for the slaughtering of animals from said slaughter-house to what is known as the Cavaroc Slaughter-House, located on the left bank of the Mississippi river, just below the United States Barracks; and that said company is about to remove all facilities for slaughtering at said place and to tear down the buildings and to compel the abandonment of slaughtering at said place. He avers that said acts are in direct violation of law and of the right of petitioner to slaughter in said slaughter-house and be provided with every facility for slaughtering and transporting the meat across the river to market. He claimed damages in the sum of five thousand dollars, and prayed for an injunction, which was granted by the court.

The answer alleges that in compliance with the requirement of the third section of the act mentioned in plaintiff's petition, being act 118 of the acts of 1869, this respondent located and erected a slaughter-house, such as is prescribed in said third section, at the place mentioned in the petition, on the right bank of the Mississippi river; that subsequently and long prior to the institution of this suit, this respondent, at the request and solicitation of nearly all the butchers engaged in business in the parish of Orleans, located and opened another slaughter-house on the left bank of the Mississippi river at the Cavaroc plantation, as described in

212        SUPREME COURT OF LOUISIANA,

Berthin vs. Crescent City Live-Stock-Landing and Slaughter-House Company.

the petition; that said Cavaroc Slaughter-House is in all respects of the dimensions required by the statute for the accommodation of all butchers, and of the capacity to enable them to slaughter five hundred animals per day; that in consequence of the Cavaroc Slaughter-House being ample and sufficient for all the purposes contemplated by law and of its superior advantages and conveniences for the business of the butchers, the slaughter-house on the right bank was nearly deserted, and it became unnecessary to keep it up for the convenience of the public; and this respondent has therefore, in the exercise of its legal rights, determined to close up said slaughter-house on the right bank of the river, and was engaged in removing the facilities and appliances necessary to the slaughtering business until arrested by this suit. Respondent avers that, under said act 118, the right of locating and erecting slaughter-houses at any point within the designated limits is conferred on respondent, and the right of changing the location or abandoning one slaughter-house and erecting another at the option of this respondent is also granted, subject to the duty of always having in operation adequate slaughter-house accommodations as prescribed by law. Respondent further avers that plaintiff has, in violation of said act 118, slaughtered animals intended for food in other places than at the slaughter-house of respondent, thereby incurring the penalty prescribed in said act, of two hundred and fifty dollars for each animal so slaughtered; that the aggregate amount of penalty so incurred is fifty thousand dollars, for which judgment is prayed in reconvention. Respondent also prayed for an injunction against plaintiff, which was not granted.

At the trial the court below rejected plaintiff's demand and dissolved the injunction; it also rejected respondent's reconventional demand and refused its application for an injunction.

From this judgment plaintiff has appealed, and respondent, joining in the appeal, prays an amendment in regard to the reconventional demand and the injunction prayed for in the answer.

The important inquiry in this case is a question of law. Had the respondent the right to change the location of the grand slaughter-house which it located and erected prior to the first day of June, 1869, pursuant to the requirement of said act 118, and which was a condition precedent to the enjoyment of the monopoly and franchises conferred by said act? Had said corporation the right to abandon the location and tear down the slaughter-house on the right bank of the river and establish as a substitute the Cavaroc Slaughter-House, situated on the left bank of the river below the Barracks?

The solution of this question will require an examination of several sections of act No. 118 of the acts of 1869, the statute creating the defendant company and conferring all the rights and franchises it enjoys.

Section one provides that after the first of June, 1869, it shall be unlawful to land, keep, or slaughter any cattle, beeves, calves, sheep, swine, or other animals at any place within the parishes of Orleans, Jefferson, and St. Bernard, except that the Crescent City Live-Stock-Landing and Slaughter-House Company may establish themselves at any point or place hereinafter provided; and said section provides a penalty against any person doing business or doing any act in contravention thereof.

Section three provides "that said company or corporation is hereby authorized to establish and erect at its own expense, at any point or place on the east bank of the Mississippi within the parish of St. Bernard or in the corporate limits of the city of New Orleans below the United States Barracks, or at any point or place on the west bank of the Mississippi river below the present depot of the New Orleans, Opelousas, and Great Western Railroad Company, wharves, sheds, yards, and buildings necessary to land, stable, shelter, protect, and preserve all kinds of horses, mules, cattle, and other animals from and after the time such buildings, yards, etc., are ready and complete for business and notice thereof is given in the official journal of the State; and the said Crescent City Live-Stock-Landing and Slaughter-House Company shall have the sole and exclusive privilege of conducting and carrying on the live-stock landing and slaughter-house business within the limits and privileges granted by the provisions of this act, and cattle and other animals destined for sale or slaughter in the city of New Orleans or its environs shall be landed at the live-stock landings and yards of said company, and shall be yarded, sheltered, and protected, if necessary, by said company or corporation." This section further provides certain fees, and also for the collection of certain charges, and it prescribes a penalty for the violation of its provisions. It also declares as follows: "The company shall, before the first of June, 1869, build and complete a grand slaughter-house of sufficient capacity to accommodate all butchers and in which to slaughter five hundred animals per day; also, that a sufficient number of sheds and stables shall be erected before the date aforementioned to accommodate all the stock received at this port, all of which to be accomplished before the date fixed for the removal of the stock-landing as provided for in the first section of this act, under penalty of a forfeiture of their charter."

Section four provides "that the said company or corporation is hereby authorized to erect at its own expense one or more landing-places for live stock, as aforesaid, at any points or places consistent with the provisions of this act, and to have and enjoy from the completion thereof, and after the first day of June, 1869, the exclusive privilege of having landed at their wharves and landing-places all animals intended for sale or slaughter in the parishes of Orleans and Jefferson, and are hereby

also authorized (in connection) to erect at its own expense one or more slaughter-houses at any points or places consistent with the provisions of this act, and to have and enjoy from the completion thereof, and after the first day of June, 1869, the exclusive privilege of having slaughtered therein all animals the meat of which is destined for sale in the parishes of Orleans and Jefferson."

Section five provides "that whenever said slaughter-houses and accessory buildings shall be completed and thrown open for the use of the public, said company or corporation shall immediately give public notice of thirty days in the official journal of the State, and within said thirty days notice, and within and from and after the first day of June, 1869, all other stock-landings and slaughter-houses within the parishes of Orleans, Jefferson, and St. Bernard shall be closed, and it will no longer be lawful to slaughter cattle, hogs, calves, sheep, or goats, the meat of which is intended for sale within the parishes aforesaid, under penalty," etc.

Considering the foregoing provisions and that part of the title of the act which declares one of its objects to be "to locate the stock-landings and slaughter-houses," our conclusion is that the location of stock-landings and slaughter-houses contemplated by this statute was a permanent and not a temporary location; that the corporation had no authority to move the grand slaughter-house which it erected pursuant to the third section of this act from the right bank to the left bank of the river; that while it has the right to establish as many slaughter-houses as may be necessary, the corporation having located and established the grand slaughter-house required as a condition precedent to the enjoyment of the franchises conferred by said act 118, having thrown it open to public use and published the required notices in the official journal, and having compelled plaintiff and all other butchers to repair to this slaughter-house to pursue their occupation, had no right to close it or remove it to another locality, because this was a lawful place for plaintiff to pursue his occupation, and defendant had no right to close it and compel him to go to another place.

The moment defendant opened this slaughter-house in the exercise of a power conferred by the statute, it became as lawful a place for slaughtering and as permanent as if that building and that locality had been specially designated in the statute. It was a place where the act authorized the butchers to pursue their business, and where the defendant had stipulated and agreed to furnish the necessary facilities and accommodations for slaughtering. After selecting this locality and compelling the butchers to repair to it, the defendant, in the absence of an express power in the statute, will not be permitted to compel them to discontinue their business at this place and follow the corporation to such

other locality as its judgment or caprice may dictate.   The intention of the statute was not to confer this arbitrary power upon the corporation. Its main object was to protect the health of the city of New Orleans by requiring the slaughtering of animals to be done within the designated limits and at one or more slaughter-houses for convenience of inspection by the proper officer; and the corporation was invested with certain franchises provided it located, erected, and opened to public use by the first day of June, 1869, " a grand slaughter-house of sufficient capacity to accommodate all butchers and in which to slaughter five hundred animals per day."   *   *   *   This slaughter-house the statute clearly requires to be kept open, and the plaintiff was entitled to the injunction which he sued out in the court below.   The record does not disclose a case entitling the plaintiff to damages.

The reconventional demand and the injunction applied for by defendant can not be allowed.

It is therefore ordered that the judgment herein be annulled, and it is decreed that the injunction herein be made perpetual, and that defendant be required to re-open the slaughter-house on the right bank of the Mississippi river and afford plaintiff and other butchers all necessary facilities and accommodations for pursuing their occupation.

It is further ordered that the defendant pay costs in both courts.

───────

MORGAN, J., *dissenting.*   The question of importance in this case is whether the defendants had the right to remove their slaughter-house from one bank of the river to the other.

It seems to me that this question is answered by the third section of the act known as the Slaughter-House Act, which provides " that said company or corporation is hereby authorized to establish and erect at its own expense, at any point or place on the east bank of the Mississippi river within the parish of St. Bernard or within the corporate limits of the city of New Orleans below the United States Barracks, or at any point or place on the west bank of the Mississippi river below the depot of the New Orleans, Opelousas, and Great Western Railroad Company, wharves, stables, sheds, yards, and buildings necessary to land, stable, shelter, protect, and preserve all kinds of horses, mules, cattle, and other animals," etc.

Plaintiff contends that having erected a slaughter-house on the right bank of the river, defendants can not tear it down or remove it to the left bank.   In my opinion there is nothing in the act which justifies this position.   There is nothing in the act which prohibits them from removing from one bank of the river to the other; nothing which declares that

once established their slaughter-house on the right or left bank, they shall continue it where first established for any stated length of time.

I can understand that if the defendants had induced the plaintiff to believe that the slaughter-house which they had erected was to be permanently located there, and he had gone to any expense in order to enable him to carry on his business at that place, and the slaughter-house was removed without good reasons therefor, that the defendants would be liable to him in damages. But it seems to me that the defendants' right to remove from one side of the river to the other, within the territorial limits designated in the act, is clear and distinct.

I therefore dissent from the opinion of the majority.

Rehearing refused.