# WHEELING.

CANBY *v.* BOARD OF EDUCATION OF SLEEPY CREEK DIST.

Submitted August 6, 1880.    Decided December 10, 1881.

*(PATTON, JUDGE, Absent.)

1. Under the act of the Legislature passed the 12th day of April, 1873, entitled "An act to amend and re-enact the school law of the State," when a person having a claim against the board of education of one of the districts of a county for materials furnished and for labor done in building a school-house in such district, and an order is made upon the sheriff of the county directing the sheriff of the county to pay such person the amount of such claim, specifying the amount to be paid and the fund to which it is to be charged, and signed by the president and secretary of said board, and such order is delivered to the person having such claim, and he accepts the same, he cannot afterwards maintain an action of *assumpsit* against the board based upon said order or said claim, for which said order was given, in case of his failure to receive or recover the same from the sheriff or his sureties for any cause ; but his sole remedy in such case to coerce payment of his debt, if the board refuses to make a special levy for the same, is by *mandamus* from the circuit court of the county.

2. In such case, if there are funds in the hands of the sheriff applicable to the payment of said order, and the sheriff fails or refuses to pay the same to the payee upon said order upon demand, it is the right of such payee to proceed against said sheriff and his securities by notice and motion in one of the courts in said act mentioned for the recovery of the amount of said order.    And it is the duty of said payee in such case to so proceed after the delivery of said order to him, unless the sheriff and his sureties are notoriously insolvent, and the legal proceeding authorized against them by the payee would be fruitless.

3. And if in such case the money in the hands of the sheriff applicable to the payment of such order is lost by reason of the sheriff and his sureties becoming insolvent, after said order is delivered to the payee, and such loss was on account of the default of said payee in failing to exercise reasonable diligence in the premises, then such loss to the amount of said order must be borne by said payee and not by the tax-payers of the school-district.

---

*Cause submitted before JUDGE P. took his seat.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Morgan, rendered on the 29th day of September, 1879, in an action of *assumpsit* in said court then pending, wherein S. Canby was plaintiff, and the Board of Education of Sleepy Creek District was defendant, allowed upon the petition of said defendant.

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the judgment complained of.

HAYMOND, JUDGE, furnishes the following statement of the case :

This is an action of *assumpsit* brought by the plaintiff against the defendant in the circuit court of Morgan county on the 14th day of December, 1877. The declaration contains one special count and common counts in *assumpsit.* The special count alleges, that on the 26th day of April, 1873, the defendant being then and there indebted to the plaintiff for work and labor done and materials furnished at the request of the said defendant in the building and erecting certain school houses in said district in the sum of $329.50, in consideration of said indebtedness made a certain order or draft, dated the day and year aforesaid and signed by E. G. Slater, president, and W. H. Butts, as secretary of said Board, &c., &c. See said order hereinafter set forth. I deem it unnecessary for the purposes of this case to set forth more of said special count. The second count is for $329.50 for the work and labor care and diligence of the plaintiff done performed and bestowed in and about the building of certain school-houses in said district, and at the special instance and request of said defendant in the year 1873 and for divers materials and other necessary things by the plaintiff before that time found and furnished and used in and about that work and labor for the said defendant and at the like special instance and request of said defendant. There is also a common count for $329.50 for money lent, and for the same amount for money paid by the plaintiff for the use of the defendant, one for the same amount for money received by the defendant for the use of the plaintiff, and one for the same amount for money found due from the defendant to the plaintiff upon an account stated.

These common counts are in the usual form, and the declaration contains the usual general conclusion. The plaintiff filed with his declaration a bill of particulars, in which he charges the defendant in the year 1873 to furnishing lumber, nails, labor in building school-house in Sleepy Creek District near Snyder's church $329.50.

The defendant appeared in court and demurred generally to the declaration and to each count thereof. And the court afterwards overruled the defendant's said demurrer to the declaration and each count thereof. The defendant then filed the plea of *non assumpsit* upon which issue was joined, and leave was given the defendant to file special pleas within sixty days. It seems that the defendant by its attorney in pursuance of said leave filed four pleas in writing numbered respectively numbers one, two, three and four, to each of which the plaintiff demurred and the court overruled the demurrer to the first plea, but sustained the demuraer as to the second, third and fourth pleas.

The said first plea is in substance, that on the 26th day of April, 1873, the sheriff of Morgan county, upon whom the said order was drawn, paid to the plaintiff thereon $100.00. The said second plea in substance alleges, that after the issuance and acceptance of said order sued upon, to wit, on the 26th day of April, 1873, $100.00 was by the sheriff of said county, on whom said order was drawn, by Arch. Waugh his deputy tendered to the plaintiff as part payment thereof; that the plaintiff refused to receive the same and permitted the same by his default to remain in the hands of the sheriff, &c., the same being money in said sheriff's hands belonging to defendant under levies made to meet this and other like drafts, and which under said order became dedicated to its payment in favor of plaintiff at once upon the acceptance of said order by the plaintiff; that the sheriff thereafter became insolvent, and as well all the sureties upon his official bond prior to this suit, and that by virtue thereof the defendant is entitled to a discharge *pro tanto* of said debt. The said third plea is substantially as follows, to wit: that at the date of the issuance by defendant and acceptance by the plaintiff of the order sued upon the drawee of said order, William Waugh the sheriff, had funds in his hands belonging to the defendant more than suffi-

cient to pay the said order, and on account of the building fund, on which said order was drawn, under levies made to meet this debt; that at that date said drawee and his sureties were entirely solvent; that the fund became set apart by said accepted order in the hands of the said drawee in favor of the plaintiff; that the plaintiff well knew, that said fund was so in the hands of said drawee for the payment of said order, and took said order for the purpose of receiving the same; that defendant rested upon said acceptance of said order by the plaintiff and supposed until lately before this suit, that it had been collected; that instead of collecting the said order the plaintiff by gross neglect held the same, until the said drawee and the sureties upon his official bond became insolvent as they did prior to this suit, and said fund perished; and that then the plaintiff resorted to the defendant, by this suit for a recovery of said order, &c. The said fourth plea is the same as the third except that it alleges, that the order was accepted by said sheriff.

Afterwards at the September term, 1879, of said circuit court the parties appeared in court by their attorneys, and a jury was duly impanelled and sworn to try the issues joined. And the jury on the same day by their verdict found for the plaintiff and assessed his damages at $329.50; and thereupon the court rendered judgment upon the verdict in favor of the plaintiff against the defendant for the amount thereof and the costs of suit.

It appears, that during the trial the defendant excepted to opinions and rulings of the court, which are shown by a bill of exceptions of defendant, which seems to be a part of the record and in due form. By this bill of exceptions it appears, that at the trial the plaintiff was introduced in his own behalf, and proved the agreement entered into between him and the defendant, of which agreement I deem it unnecessary to state more than the substance. By the agreement it appears, that the plaintiff agreed with the defendant to build and finish and find all of the materials in good, substantial and workmanlike manner a school-house in district number two in Sleepy Creek township agreeable to the draft, plan and explanation annexed to the contract—the agreement then proceeds to describe the size and manner in which the school-

house should be built, also benches, &c., and then proceeds to state, that the defendant agrees "to pay the plaintiff for the same the sum of $329.50 as commissioners as aforesaid will in the manner prescribed by law pay the amount as follows": The sum of $100.00 when the building is enclosed and the roof put on, and the remaining $229.50 when the building is completed. This agreement does not appear to have been signed by the parties or any person for them. It seems to be a copy tested by the defendant of the body of an agreement without showing the names of the parties who executed it, if it was ever executed. The said bill of exceptions further shows, that the plaintiff also proved the execution to him by defendant of the order sued upon in these words:

"No. 40.        MORGAN COUNTY, W. VA., April 26, 1873.

"Treasurer of Morgan county, pay to the order of Samuel Canby $329.50 and charge to the building fund of Sleepy Creek township.

"By order of the board of education.

"E. G. SLATER, *President.*
"W. H. BUTTS, *Secretary.*"

The plaintiff further testified, that he had never received payment of said order, or any part thereof, from the sheriff on whom it was drawn, or from the defendant, but that he was willing, when said order was given to him, and always afterwards, to receive either any part thereof in any sums, or the whole thereof; that he called upon the sheriff, on whom said order was given, for payment thereof or of a portion thereof three times—once at Miller's sale and twice in Bath, and all of this during 1873; that the sheriff refused to pay him any part of said order, and declared that he had no funds in his hands belonging to the Sleepy Creek district building fund; that he never returned said order to said board, nor notified the board of the failure to collect it, having placed it for collection in the hands of his attorney.

It further appears by said bill of exceptions, that thereupon the defendant introduced evidence tending to prove, that at said Miller's sale the said sheriff said he would pay $100.00 to plaintiff then and said he thought he could pay him $100.00 the next week, thought the money produced or

tendered, but that plaintiff declined the offer and said he
wanted all, that so much would do him no good; and there-
upon the defendant offered to introduce the following evidence,
to wit: That the president of the board of education of
Sleepy Creek township (which board made the contract with
the plaintiff on which said order is based) was jointly interes-
ted with the plaintiff in the original contract; that there was
a fund in the hands of said sheriff at the date of said order,
and for years thereafter, to the credit of said building fund
and ample in amount to satisfy said order, and that the books
of said board and the settlements therein entered with said
sheriff showed said facts, and that the said order was in said
settlement entered to said sheriff's temporary credit as an
outstanding order; that after the issuance by the defendant
and acceptance by the plaintiff of the order sued upon, to wit:
on the 25th day of April, 1873, the sum of $100.00 was
by the sheriff of Morgan county, on whom said order was
drawn, or by Archie Waugh, his deputy for said district, ten-
dered to the plaintiff as above stated as part payment thereof,
and the plaintiff refused to receive the same; that the said
sheriff and his sureties were solvent at the date of the
issuance of said order, and for at least a year thereafter, and
that then said sheriff and sureties became insolvent prior to
this suit; that at the date of the issuance by defendant and
acceptance by plaintiff of the order sued upon, said sheriff
had in his hands a fund ample to meet said order, raised by
a levy of forty cents on the $100.00 by taxation duly levied
by said board, and so raised for the purpose of meeting
said order among others; that the plaintiff well knew, that
said fund was so in the hands of said sheriff for the payment
of said order and took said order for the purpose of receiving
the same, and said order was accepted by said sheriff shortly
after its issuance; that defendant rested upon his acceptance
thereof, and supposed until shortly before this suit, that it had
been collected.   To the introduction of all which evidence
so offered to be introduced by the defendant, the plaintiff's
counsel objected, and the court sustained said objection and
the evidence was excluded, to all which the defendant ex-
cepted, &c.

It further appears, that the plaintiff asked the court to in-

struct the jury as follows: "The court instructs the jury, that the plaintiff as the holder of the order sued upon in this cause, had the right to refuse to receive from the sheriff any sum less than the full amount, which he was entitled to receive by virtue of the said order drawn upon the sheriff as the treasurer of the Board of Education of Sleepy Creek district.  If therefore the jury should find from the evidence that the plaintiff, at one or more times, did refuse to receive a sum less than the amount of the said order, such fact constitutes in itself no defence to this action."

From the said final judgment of said circuit court rendered upon the verdict of the jury the defendant obtained from this court a writ of error and *supersedeas*.

*Dandridge & Pendleton* for plaintiff in error cited the following authorities:  Acts 1872–3, pp. 382—436 ; Daniel Neg. Inst. § 433 and cases cited in notes; 7 Ind. 404; 29 Gratt. 165; 1 Sm. Lead. Cas. 147; Chit. on Cont. 823, 824 ; 6 Gratt. 363; 21 Gratt. 1 ; Byles on Bills s. p. 19 note 1; 4 Kent Com. (4th ed.) 549 ; 22 Gratt. 742 ; 4 Den. 520 ; 48 Mo. 207.

*J. S. Duckwall* for defendant in error cited the following authorities:  Code ch. 52 § 1 ; *Id.* ch. 45 §§ 5, 6, 7 ; Acts 1872–3 ch. 123 § 7 ; Acts 1877 ch. 31; Acts 1872–3 ch. 123 § 46 ; Acts 1877 ch. 77 § 46.

HAYMOND, JUDGE, announced the opinion of the Court :

The counsel for the plaintiff and defendant in error rely upon the school-law passed by the Legislature on the 12th day of April, 1873.   See Acts of 1872–3, p. 382.   It is therefore necessary to ascertain what that law is, so far as it bears upon this case.   The act is a very long one, but still it is essentially necessary to ascertain what it is, so far as it is applicable to this case, in order to a right and intelligent understanding of the case and the principles involved in it.

The 7th section of chapter 123 of the said Acts, p. 386, incorporates the board of education of each school district.

The 37th section of said chapter p. 406 exempts all school-houses, school-house-sites and other property belonging to any board of education and used for school-purposes from execution or other process, and from lien on or other distress

for taxes or county-levies, and provides that when any order of the board upon the sheriff of the county or judgment or decree for a sum of money against the said board has been presented to such sheriff without obtaining judgment, payment thereof "may be enforced by the circuit court by *mandamus* or an order for a specific levy on the property taxable in the district." The 38th section of the said chapter requires the board of education of their district to provide school-houses and grounds, furniture, fixtures and appendages, and to keep the same in good order and repair, and to supply said school-houses with fuel and all other things necessary for their comfort and convenience; and to pay the principal and interest of any loans made pursuant to this section, and all other expenses incurred in the district in connection with the schools not chargeable to the "teachers' fund," and to annually levy a tax on the property taxable in each district not to exceed, in any one year, the rate of forty cents on every hundred dollars' valuation thereof, according to the latest assessment of the same for state and county taxation.

The 39th section of said chapter provides, that the proceeds of taxes so levied, of school-houses and sites sold, of all donations devises and bequests applicable to any of the purposes mentioned in the preceding section, and of any loans that may be made for such purposes, shall constitute a special fund to be called the "building fund" to be appropriated exclusively to the purposes named in the preceding section, and that the board of education of any district may borrow money for such purposes on the credit of the "building fund," but such loans shall at no time amount in the aggregate to more than can be paid by a levy at the rate of twenty cents per hundred dollars per year for three successive years on the assessed valuation of the district.

The 33d section of said chapter provides, that the president of the board of education of every district shall at least once a year examine the school-houses and school-house-sites in his district, and report the condition of the same to the board; and such as are, in their judgment, properly located, and are sufficient, or can with reasonable expense be rendered so, shall be retained for the use of the public schools, and the remainder, with the consent of the county superintendent, shall be

sold at public sale or otherwise by the board of education, and on such terms of sale as the board may order and the proceeds be added to the building fund, &c.

The 43d' section of the said chapter provides, that, the assessor of every assessment district, shall make out and distribute to the secretary of the board of education of each district and independent school-district, in his district, on or before the 1st day of September in each year, a certiffcate showing the aggregate value of all personal property and real estate respectively in such district or independent school-district, which certificate shall serve as a basis for any levy that may be made for school purposes for that year.

The 44th section of said chapter provides, that immediately upon the receipt of the certificate mentioned in the preceding section, and of the notice from the county-superintendent as hereinafter provided, showing the amount of the general school fund to which such district or independent school-district is entitled, it shall be the duty of the board of education of such district to determine the rates of taxation necessary for the pay of teachers and for the building fund in their district for the school-year, and report the same by their secretary to the clerk of the county court, to the county-superintendent, and also to the assessor.    And thereupon it shall be duty of the said assessor to extend on his books the assessment for State and county purposes, the amount of taxes levied as aforesaid in two separate columns, the one headed " teachers' fund," and the other " building fund," from which extension the sheriff shall proceed to collect the same, and shall account therefor as required by law.

The 46th section of said chapter provides, that the sheriff or collector of the county shall collect and disburse all school money for the several districts and independent districts therein, both that levied by said districts and that distributed thereto by the State.    He shall be required by the county court to give therefor, in addition to his bond as collector of the State and county taxes, a special bond with approved security, in a penalty equal to double the amount which will come into his hands for school-money, which bond it shall be the duty of said court to change from year to year, as the increase of the amount to be collected and disbursed by said

sheriff may require. He shall keep his accounts with the several boards of education of each district and independent school-district; one of money belonging to the teachers' fund, and the other of money belonging to the building fund, and shall credit every receipt and charge every disbursement to the proper account. He shall pay out no money standing to the credit of the board of education, except upon an order signed by the secretary and president thereof, specifying the sum to be paid and the fund to which it is to be charged ; or upon a certified copy of a judgment or decree against the said board, for a sum of money therein specified, or upon an order of the county-superintendent as provided in section eight of this chapter. He shall, on or before the 1st day of September in each year, settle with the board of education of each district and independent school-district, in which settlement he shall be charged with the amount of the general school fund received by him, and the amount of taxes levied by the board of education upon the property of the district or independent school-district for the teachers' fund and the building fund, and for any other moneys received by him during the preceding year on account of the free schools of such district or independent school-district, and he shall be credited with the amount of delinquent taxes of such district or independent school-district that have been duly returned by him and certified by the clerk of the county court to such board of education. He shall also be credited in such settlement with all vouchers produced by him, if found to be correct by the board of education, and he shall receive no other credit, except his commission, as herein provided ; but if he shall pay out more money in any one year on account of the teachers' fund or building fund, than shall have come to his hands during said year, he shall in said settlement receive no credit for such excess. He shall receive no pay for the disbursement of any school-money. If he fail to account for and pay over, as required by law, any money which may come into his hands, or for which he is liable, judgment may be recovered therefor against him and his securities with interest and ten per cent. damages, *and upon the failure of such sheriff to honor any proper draft which may be drawn by the said board of education upon him, judgment upon motion therefor* may be obtained

before any justice of his county, or before the county or circuit court thereof, he having had at least ten days notice of the motion.

The 52d section of said chapter provides, that the sheriff shall make annual settlements, by districts with the county court at its next term after the 1st of September of each year, showing amount of all moneys received and disbursed by him for the preceding year for school and building purposes from the State-fund, and from the district and independent school district, and the amount due to each district; which settlement shall be made matter of record by the clerk of said court in a book to be kept for that purpose.

I think it is manifest from what has preceded, that under said chapter 123 the sheriff of the county was in fact the treasurer of each school-district and was so at the date of said order, as it is called. It must be taken, that both the plaintiff and defendant knew this fact at the time the said order was made in favor of the plaintiff and accepted by him. The board of education is a public corporation created by law as a part of the common school-system of the State and as being necessary for the proper and efficient government and success of that system of schools, which was created by law for the instruction and education of the children of the State. The law contemplates, that the schools of each school-district shall be kept up and supported by taxes imposed by the board of education upon the taxable property of each school-district; that in fact all the school-house-sites, school-houses, &c., shall be acquired, built and paid for in the same manner. To this end the board of education of each district is given plenary power to levy the necessary taxes. It is manifest from the law itself, that all debts contracted by the said board shall be paid by taxation and out of the taxes levied by the board, and not by the forced sale of the property real or personal acquired by the board for school purposes.

The law authorizes the board to acquire real property for sites for public school-purposes, and to cause to be built thereon the necessary school-houses, &c. Of course the building of these school-houses must be by contract made by the authority of the board, but the party contracting to build cannot be supposed to build upon the credit of the property ac-

quired and held by the board for public school-purposes, but he must be supposed to look to the "building fund" for ultimate payment and to his right under the law to compel the board, if the "building fund" provided for the purpose by levy made by the board is insufficient, to provide for its payment by a sufficient levy for that purpose. Under the law the board cannot collect or receive the taxes levied or any part thereof. This is required to be done by the sheriff of the county. The board cannot receive or pay out the taxes levied and collected upon debts contracted by the board for building school-houses. This can be done alone by the sheriff, who is the treasurer of all the school funds, which under the law stand to the credit of the board, and he is by the law forbidden to pay out any part thereof except upon an order signed by the secretary and president of the board, specifying the sum to be paid and the fund to which it is to be charged, or upon a certified copy of a judgment or decree against the said board for a sum of money therein specified, or upon an order of the county-superintendent as provided in section 8 of said chapter 123.

Section 8 above referred to, so far as the county-superintendent is concerned, refers to the compensation of the secretary of the board, and it provides, that for his services as secretary he shall receive such compensation as the board may determine, not exceeding $25.00 per year, to be paid out of the building fund by an order drawn by the county-superintendent, &c. When an order is drawn upon the treasurer, (who is the sheriff) for a sum of money signed by the secretary and president of the board specifying the sum to be paid and the fund to which it is to be charged, as was done in this case, it is the duty of the party to whom the order is delivered to demand payment of the sheriff, and if there is money in the hands of the sheriff properly applicable to the payment of the order, it is the duty of the sheriff to pay it ; and if he refuses to pay the order under such circumstances, it is the right and duty of the payee and owner of such order to proceed against the sheriff and his sureties under and according to the last clause of section 46 of said chapter 123, unless the sheriff and his securities are notoriously insolvent ; and if he fails to exercise reasonable diligence in this behalf, and the

money is lost by his failure to commence legal proceedings aforesaid against the sheriff and his sureties within a reason-able time after he receives the order by reason of the sheriff and his sureties becoming insolvent, he must bear the loss, and not the tax-payers.  But if the board has failed to levy a sufficient tax to pay the debt, or if there are funds in the hands of the sheriff applicable to the debt, and the sheriff and his sureties are notoriously insolvent, so that by the exercise of reasonable diligence on the part of the payee in proceeding against the sheriff and his sureties by notice and motion as authorized by the act would be fruitless, then it would become the duty of the board under said 37th section to make a specific levy on the property taxable in the district upon being informed of the facts and requested so to do; and upon the refusal of the board to provide for the payment of the debt by such levy upon the petition of the payee and owner of the order setting forth the material facts, the circuit court of the county would enforce the payment thereof by *mandamus* by compelling the board to provide for the payment of the debt by levying a tax sufficient for the purpose.

Such an order or draft under the provisions of said 123d chapter was evidently intended by the Legislature to be a conditional payment of the debt; and it was further intended, that if he failed to obtain payment of the order or draft for either of the causes above named, his remedy in court to enforce the payment of the order should be by *mandamus* alone against the board.  When there is no dispute between the board and the party, who makes the claim for building, &c., then of course it is supposed by the law, that a proper order will be made and delivered to the claimant.  But if in such case or in any case, where the party had a claim against the board and the board refused to give an order for its payment, it would be competent for the claimant to sue the board and obtain judgment therefor; but for the reasons above stated I do not see, that a judgment when obtained against the board would place him in any better situation under the law than a proper order on the sheriff, such as was given in this case.

Entertaining these views I am of opinion, that the circuit court erred in overruling the defendant's demurrer to the first count of the plaintiff's declaration, but did not err in overrul-

ing the plaintiff's demurrer to each of the other counts. It appears by the defendant's bill of exceptions filed in the cause, that the plaintiff without objection gave in evidence to the jury said order or draft in support of the issue on his part, and when he did so, I am of opinion for the reasons above stated, that he showed, that he had no right to recover upon the common counts in this case for the $329.50 specified in his bill of particulars for furnishing lumber, nails, labor, in building school-house in Sleepy Creek district near Snyder's Church, for which said order was given, and that he had mistaken his remedy, even though his claim was just and should be paid.

Under the views I have expressed above the defendant's first, second, third and fourth special pleas are not proper in this case, as they are manifestly pleas to the first count in the declaration, which is based upon the said order. No reference is made to said order in any count of the plaintiff's declaration except in the first. The first special plea however was received by the court, and issue was made up thereon without objection. When this cause is remanded to the circuit court, said court should allow this plea to be withdrawn, or it should be stricken from the record on motion of either party. The defendant's second, third and fourth pleas, which were rejected by the court for reasons above stated, it is unnecessary to further consider. And under the views I have expressed it is unnecessary to further consider, whether or not the court erred in rejecting the evidence offered by the defendant in its bill of exceptions mentioned. The instruction given by the court at the instance of the plaintiff mentioned in said bill of exceptions is erroneous, because it is based upon said order, and from its terms the jury might well have inferred, that the plaintiff was entitled to recover in this action upon the said order the amount thereof, and that the order authorized them so to find. If the said order was made and signed, as upon its face it purports, and was delivered to the plaintiff and was by him accepted upon his account or claim against the defendant of $329.50, which he at the date of said order had against the board of education for furnishing lumber, nails and labor in building a school-house in Sleepy Creek District, &c., as in plaintiff's bill of particulars filed with his declaration is

charged against the plaintiff, then the plaintiff is not entitled to recover in this action for said account or claim upon either of the said four last counts in his declaration contained. His remedy, if his claim be just, is by another and materially different proceeding, as before stated.

For the foregoing reasons there is error in the judgment of the circuit court of the county of Morgan rendered in the case at the September term, 1879, of said court in favor of the plaintiff against the defendant for the sum of $329.50, with interest from the 29th day of September, 1879, till paid and the plaintiff's costs. The said judgment must therefore be reversed and annulled; and the plaintiff in error, The Board of Education of Sleepy Creek District of Morgan county, must recover against the defendant in error its costs in this Court expended. And this Court proceeding to render such judgment in the case as the said circuit court should have rendered, it is considered, that the defendant's demurrer to the first count of the plaintiff's declaration filed in the case be sustained; and that the defendant's demurrer to the other counts of said declaration be overruled. And it is further considered, that the verdict of the jury rendered in this case be set aside, and a new trial in the case be awarded, the costs of the former trial to abide the event of the suit. And it is further considered, that this case be remanded to the said circuit court with instructions and directions to permit the defendant's first special plea in writing filed in the case to be withdrawn or to order it to be stricken from the record on motion of either party, and to permit the defendant, if it so ask, to file an additional plea or pleas within such time as the court may deem reasonable, and for such other and further proceedings in the said circuit court to be had, as are in accordance with the principles settled in this opinion, and further according to law.

JUDGES GREEN AND JOHNSON CONCURRED.

JUDGMENT REVERSED.   CAUSE REMANDED.