# CHARLESTON.

## THOMAS *v.* TOWN OF MASON.

Submitted June 22, 1894.—Decided November 24, 1894.

1. MANDAMUS—MUNICIPAL CORPORATIONS.

    Where the common council of a municipal corporation has given its creditor an order on its treasurer for the payment of his claim and then refuses to pay it or provide for its payment, *mandamus* is the creditor's proper remedy, and he is not required to first reduce his claim to judgment by one of the ordinary actions at law.

2. MANDAMUS—MUNICIPAL CORPORATIONS.

    When there is an epidemic of smallpox or other dangerous contagious disease within the corporate limits, the council of such city, town or village has power to provide for the medical treatment and care of poor persons residing therein. See sections 28 and 43 of chapter 47 of the Code. And when it has power to create a debt, it can in a proper case be compelled by *mandamus* to provide funds for its payment.

3. MANDAMUS—MUNICIPAL CORPORATIONS.

    The power given by the statute to the state and local boards of health is not in such case exclusive.

C. E HOGG for petitioner :

I.— *The power to relieve the indigent sick is inherent in every municipal corporation.*—4 La. Ann. 42; 36 Mich. 474; 1 Mich. 526; 46 Ala. 411; 27 La. Ann. 101; 6 N. E. Rep. 1; 106 Ind. 129.

II.—*Municipal corporations can not refuse to pay for work done for them under contract, unless such work is contrary to statute and public policy.*—6 L. R. A. 318; 2 Dill. Mun. Corp. (4th Ed.) 531; 47 Ind. 407; 14 Pa. St. 81; 28 N. E. Rep. 400 ; 25 Pac. Rep. 1020.

III.—*The doctrine of* ultra vires *should not prevail to the defeat of justice and the working of a legal wrong.*—22 Cal. 620 ; 20 N. J. Eq. 452; 63 N. Y. 62

IV.—*In applying the doctrine of* ultra vires *to corporate acts courts generally allow contracts executed to stand.*—39 Ill. App. 218; 4 Keges 208 ; 22 N. Y. 503; 64 U. S. 381; 22 N. Y. 258 ; 29 Barb. 35 ; 6 Ohio St. 137; 1 L. R. A. 285.

V.—*Mandamus the proper remedy.*—17 W. Va. 612; 33 W. Va. 473; 9 S. E. Rep. 1000; 16 S. E. Rep. 722, 724 ; 93 Mo. 321; 24 Atl. Rep. 387; 17 S. E. Rep. 379; 86 Ind. 17 ; 61 Miss. 548.

VI.—*Orders signed by proper officers are* prima facie *binding and legal.*—1 Dill. Mun. Corp. (4th Ed.) § 502; Id. 407 (n. 1.)

J. U. MYERS for appellee, cited 86 Ind. 184; 98 Ind. 546; 18 Fed. Rep. 873; 14 Am. & Eng. Ency. L. 180, 187, 223; Merr. Man. §§ 16, 19, 51, 55, 57; 17 Ia. 1; 18 Wall. 71; 74 Mo. 229; 115 U. S. 616; 26 Ia. 515; 37 Ia. 34; 90 U. S. 582; 14 Am. & Eng. Ency. L. 187; Merr. Man. § 130; 61 Mo. 155; 46 Mo. 231; 86 Ind. 184; 98 Ind. 546; 18 Fed. Rep. 873; Hutch. Treat. § 1277; 14 Am. L. Reg. 124; 19 Alb. L. Jour. 298; 8 Cent. L. Jour. 344; Code, c. 47, s. 46; Id. s. 43; 23 W. Va. 456; 17 W. Va. 619; 30 W. Va. 439; 15 Am. & Eng. Ency. L. 1039; 33 W. Va. 95; Id. 473; 17 W. Va. 595; Id. 628; Code, c. 39, s. 43; 19 W. Va. 93; Code, c. 99, s. 7; 39 Am. Rep. 63, 68; 99 U. S. 590; 38 W. Va. 104, 109; 53 Mich. 135; 52 Wis. 423; 2 McCord 170; 20 Cal. 72; 10 Var. 629; 2 Ind. 527; 11 Ind. 205; 41 Me.

15 ; 15 Barb. 529 ; 18 Barb. 468 ; 1 Kan. 250 ; 25 Ind. 177 ; 2 Leigh 165 ; 11 N. Y. 563 ; 44 Conn. 180 ; High Ex. Leg. Rem. §§ 9, 10, 15 ; 12 Barb. 27 ; 25 Barb. 73 ; 17 Ala. 527 ; 6 Ad. & E 355 ; 33 W. Va. 94 ; 19 W. Va. 93 ; 33 W. Va. 475 ; Id. 589 ; Id. 595 ; High Ex. Leg. Rem. § 339 ; Code, c. 7 s. 35 ; Id. s. 25 ; Id. s. 30 ; 31 High Ex. Leg. Rem. § 371 a.; Id. § 369 ; 9 S. E. Rep. 1000 ; Dill. Mun. Corp. § 1 ; Id. 504 ; Id. 487 ; High Ex. Leg. Rem. § 1, 16, 283 ; Merr. Man. §§ 16, 17 ; 16 Ohio St. 308 ; 24 How. 376 ; 10 Wend. 395 ; 77 Va. 415 ; 3 Burr. 1267 ; 17 W. Va. 595 ; Mos. Man. 19 ; 2 Leigh 165 ; 21 Am. Dec. 604 ; 112 U. S. 177 ; 89 Am. Dec. 729 ; Merr. Man. §§ 10, 12, 16, 19 ; Code, c. 44, s. 28.

HOLT, JUDGE:

J. D. Thomas had a claim of four hundred dollars against the town of Mason, and, to compel the town to make a levy for its payment, he obtained an alternative writ of *mandamus*, which being served, the defendant on the 1st day of May, 1893, in the County Court of Mason county appeared and moved to quash and dismiss the same; and the motion having been argued was sustained, the peremptory writ refused, and the case dismissed, and this writ of error was allowed the plaintiff, Thomas.

The facts averred in plaintiff's petition and the alternative writ are as follows: The town of Mason provides for its own poor and therefore is not required to pay any poor levies assessed by the County Court for the support of the poor outside its corporate limits. See Code, s. 43, c. 47. It has the power, and it is its duty, to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholsome. See Code, s. 28, c. 47. A smallpox epidemic is such dangerous and offensive thing. On and before the 18th day of July, 1892, an epidemic of smallpox prevailed in said town among its residents. Dr. D. A. Thomas, a practicing physician of skill and experience, was employed by the town to treat certain poor persons for smallpox, who were proper residents of the town. Under such contract and employment the doctor did carefully, faithfully and skillfully treat such persons in the town of Mason for smallpox during the month of July, 1892,

and made out and rendered his account therefor to the common council, amounting to four hundred and thirty six dollars. By compromise and agreement the sum was fixed at four hundred dollars, and was at a meeting of the common council on the 18th day of July, 1892, audited and allowed, and the council caused an order therefor in due form of law payable to the order of D. A. Thomas to be delivered to him, dated July 18, 1892, and signed by the recorder and addressed to the treasurer of the town of Mason. This order was by written assignment on the back on the 19th day of July, 1892, for value assigned and delivered by D. A. Thomas to plaintiff, J. D. Thomas, of which defendant then and there had notice. On the 3d day of April, 1893, the common council at a special meeting entered an order, that the said allowance and order be set aside and held for naught, and refused and still refuses to pay the same or to levy a tax for its payment. The plaintiff presents an order dated on the 18th day of July, 1892, addressed to the treasurer of the town of Mason, directing him to pay to the order of D. A. Thomas, plaintiff's assignor, four hundred dollars for services in smallpox epidemic, signed by the recorder. At a meeting of the common council of the town of Mason on that day, plaintiff's account, to the extent of four hundred dollars, was audited, allowed and ordered to be paid, and the order in due form of law was issued, signed and delivered.

By Code, c. 99, s. 14, the assignee of this non-negotiable instrument may maintain an action in his own name. Such orders, signed by the proper officers, are *prima facie* binding and legal, for the officers will be presumed to have done their duty. Such orders make a *prima facie* cause of action. Impeachment must come from the defendant. See Dill. Mun. Corp. (4th Ed.) 566, § 502, and note, p. 562. This the defendant undertakes to do, and says: (1) The town of Mason has no authority, express or implied, under its charter or by general law, to levy a tax to support its poor, and that it must be clearly made to appear that the municipal corporation has such power, before it will be ordered to make the levy to pay the claim demanded. (2) *Mandamus* in the absence of a statute authorizing it will

not lie to compel a levy for its payment, before it has been reduced to judgment, and that we have no such statute.

Plaintiff, in his alternative writ and petition, says:

"(1) The town of Mason has such power to support its poor and in point of fact exercises it and by reason thereof has not paid or been required to pay any poor levies assessed by the County Court for the support of the poor outside its corporate limits.

"(2) This debt was incurred in the exercise of the power conferred and the duty imposed by section 28, c. 47, of the Code (see Ed. 1891, p. 426). To prevent injury or annoyance to the public or individuals from anything dangerous, offensive, or unwholesome.

"(3) But if the making of this contract and incurring this debt by the corporate authorities was *ultra vires*—beyond their power—yet the contract was executed by the plaintiff; and his time devoted to the staying of the spread of this pestilence, and this dangerous and irksome labor gone through, can not be, the one restored, or the other recalled. The town has had his peculiar skill and services, and he can not now be placed in *statu quo*. Therefore they are in consideration of this and of their said exemption estopped to plead the want of power to contract; and if they can contract they can be compelled to pay.

"(4) Under our statute and our cases *mandamus* may be used to compel the levy, before the claim is reduced to judgment, because our statute regulating the proceedings in *mandamus* conforms it in the methods of making up and determining issues of law and of fact to the pleading and practice in an ordinary action at-law; and, as the town has nothing that can be taken on execution, the judgment is, so far as satisfaction and fruition are concerned, a vain and idle thing leaving him where he started with the burden and delay of resorting to *mandamus* as his only remedy to compel the payment of his debt. Something not disputed or denied would be established by the judgment—that is all."

The writ of *mandamus* is as old as legal memory and has not fallen into desuetude anywhere. It is now largely regulated by statute, and it is the common-law mode of

compelling specific performance of duties of a public or *quasi* public nature and duties in other cases, where the law has established no specific remedy, and in justice there should be one. See High, Extr. Rem. (2d Ed.) §§ 1, 2. Where our two methods of procedure, at common-law and in equity, have been blended into one with the rights still distinct—but in case of conflict equity furnishing the rule—the writ of *mandamus* has quite a large and extended ancillary and supplementary use in the nature of a mandatory injunction in aid of legal proceedings in general. For its character and use, see *Dew* v. *Judges* (1808) 3 H. & M. 1; *Runkel* v. *Winemiller* (1799) 4 Har. & McH. 429; *Dane* v. *Derby* (1866) 54 Mc. 95 (89 Am. Dec. 722, 728, monographic note); *Coy* v. *City Council* (1864) 17 Ia. 1 (85 Am. Dec. 539, 544, note); *Ray* v. *Wilson* (1892) 29 Fla. 342 (10 S. E. Rep.613, and 14 Lawy. Rep. Ann. 773, and note).

Our statute (Code, c. 109) regulating proceedings in *mandamus* treats the writ as an ordinary action at law. The proceedings go on as an ordinary common-law suit, till the parties are at issue in fact or in law; then these are tried as in an action at law between parties. *Fisher* v. *City of Charleston*, 17 W. Va. 595; *Fisher* v. *Mayor, etc., Id.* 628; Hutch. Treat. p. 899, § 1272 *et seq.*; 2 Bart. Law Pr. (2d Ed.) p. 1203, § 291 *et seq.* It is the modern common-law mandatory injunction with a tendency in our day both at home and abroad to widen rather than contract, as the discharge of the very duty or obligation is generally more satisfactory than damages for its breach. See 2 Dill. Mun. Corp. (4th Ed.) § 826 *et seq.*; *Id.* § 831a.

Has the town of Mason power to provide for its own poor? It has no such power according to *Wells* v. *Town of Mason*, 23 W. Va. 456. Section 43 of chapter 47 of the Code says, the inhabitants of a town, which provides for its own poor, shall not be required to pay any levies assessed by the County Court for the support of the poor outside said corporate limits; and section 32 says indirectly, that the male resident of the town, if a pauper, shall not be required to work the roads and streets of the town; but there is no statute imposing the duty on the town or di-

rectly exempting the inhabitants from the payment of county poor rates.

But the power to relieve the indigent sick in times of epidemic disease is inherent in every municipal corporation upon the ground of self protection, if upon no higher ground; and, as the question is here presented, the town of Mason did provide for its own poor within its corporate limits, and taxpayers were thereby relieved from the payment of county taxes for such purpose; but whether they were relieved or not, or whether, if relieved, it was without authority of law, is in my opinion immaterial to the decision of this case, for there is nothing in the law to forbid their providing for their own poor in such emergency, and as a concession they did so provide. I can see no reason why this case as made by plaintiff's petition and writ (and by that and that alone on this motion the case must stand or fall) does not come within the provision of sections 28 and 29 of chapter 47 of the Code; for section 28 expressly confers upon the town-council and imposes on it the duty to take care to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome, and section 29 says it shall have power to make and pass all needful orders, by-laws, ordinances, resolutions, rules and regulations not contrary to the constitution and laws of this state. This petition says that smallpox is loathsome and contagious; that it prevailed in this town among the indigent and others as an epidemic, to the great damage and injury of the people of the town and annoyance of the public in general. What is it, that we can take judicial notice of, that enables us to qualify or contradict these averments? They bring the case within the letter and the spirit of this law, no matter what other agencies may have duties to perform in such cases, such as the County Court. See section 26, c. 39 ("The State and Local Boards of Health"). See chapter 150, p. 92, Code 1891. Therefore they could create the debt. Under the law they are under obligation to provide the means of payment, and the corporation can only do that out of taxes levied or to be levied; and that in a proper case the corporation can be compelled to do. Code, c. 47, s. 30; Merrill, Mand. § 129.

As we have already seen, this municipal corporation is by the general law invested with express power to prevent injury to the health of the public generally and to its individual inhabitants. This is said to be one of the chief purposes of local town government, and reasonable by-laws in relation thereto have always been sustained as within the individual authority of such corporations to ordain. 1 Dill. Mun. Corp. (4th Ed.) § 369 *et seq.*, and notes. This is said to be one of the most important functions of a municipal corporation and, when not expressly given, is conferred by implication upon all governing municipal boards as a part of the police power of the state delegated to them by the legislature, and in this state expressly given to enable them to carry into effect the so-enumerated powers; and to that end "the council shall have power to make and pass all needful orders, by-laws, ordinances, resolutions, rules and regulations not contrary to the constitution and laws of this state;" and surely to do what was done in this case is not contrary to our constitution and laws. Section 29, c. 47, of the Code. See 2 Beach, Mun. Corp. § 983; *State* v. *Wordin* (1888) 56 Conn. 216, 226 (14 Atl. Rep. 801). And the establishment of our state and local boards of health is not to be regarded as detracting from the general powers of municipal government, unless such legislative intent clearly appears. 2 Beach, Mun. Corp. § 989; *Hart* v. *Mayor* of Albany, 3 Paige, 213; *Kennedy* v. *Phelps*, 10 La. Ann. 227.

In such circumstances, it is not necessary to discuss the doctrine of the defendant's being estopped to plead *ultra vires*, on the ground that the contract is executed on the part of plaintiff, and that such a plea would defeat the ends of justice and constitute in itself a legal wrong; for, as we have just seen, what was done in this case was clearly within the general scope of their authority, as expressly given, and the right to rescind the order after plaintiff's right had vested can in this case only be determined on the issues of fact. As they now appear, the common council attempted to rescind it without cause. See 1 Dill. Mun. Corp. § 290.

Again, it is said, that plaintiff's application for this writ

is premature; he must first reduce his claim to judgment
and then apply; and it is added on behalf of defendant:—
"When he sues at law, we will meet him on the merits and
show that the facts alleged are not true, and that his claim
is without merit." But the answer to that is, this writ and
petition must be taken at their face value, and the facts al-
leged therein as true; and among them we find the aver-
ment that there is no money in the treasury of the town to
pay this claim, and the town refuses to pay, or to lay a levy
for that purpose, or in any way to provide for its payment.
Upon principle why sue in *assumpsit* ? An ordinary suit
at law ending in an ordinary judgment would bring him no
nearer fruition than when he commenced. In this case,
where no facts are in dispute, such a suit would be a vain and
idle thing with *mandamus* still to be brought as his only
means of compelling payment; for this municipal corpo-
ration is possessed of nothing tangible—nothing subject to
levy. His right is undisputed in our view of the law, but
this action of *assumpsit* would leave its violation just as
far from being redressed as when he put that remedy in
motion, when to this remedy he must come at last as his
only means of obtaining satisfaction—a remedy with all
the judicial methods of making up and trying all issues of
law and fact. There is no reason, and there can be none,
which does not impliedly involve a flat contradiction of one
or more facts which have been accepted as true. In this
day, therefore, the plaintiff should not be sent this long
way round to reach a point near by and directly in view.
Nor does the case of *Johnson* v. *Town of Alderson,* 33 W.
Va. 473 (10 S. E. Rep. 815) as I read it, so hold. That case
went upon the ground that the order or certificate was
made payable out of taxes of a fiscal year subsequent to
the year, in which the contract was made and the work
was done, and out of the taxes of which year the plaintiff
was to be paid. The certificates were void and not bind-
ing on either party, because the agreement to take them
was *ultra vires.* There the suit was on the account, not up-
on the order of the town-council, and did not come with-
in the doctrine announced in the case of *Ratliff* v. *County
Court,* 33 W. Va. 94 (10 S. E. Rep. 28). See, also *Canby* v.

*Board,* 19 W. Va. 93; 2 Dill. Mun. Corp. (4th Ed.) § 849 *et seq.; Gardner* v. *Haney,* 86 Ind. 17. These cases rule this case and show that, if the order in this case is a subsisting liability against this municipal corporation, and it refuses to pay or provide funds for its payment, then the remedy may be by *mandamus* to compel it to levy or in some way provide a fund for its payment.

With this view of the law the judgment complained of must be reversed; and the case be remanded for further proceedings.

## CHARLESTON.

