(44 South. 898.)

No. 16,701.

CITY OF NEW ORLEANS v. MURAT.

(Nov. 4, 1907.)

1. MUNICIPAL CORPORATIONS—POLICE POWER —HEALTH—REGULATION OF DAIRIES.

By Act No. 45, p. 46, of 1896, the city of New Orleans was given express authority and power to regulate the location of, and inspection and cleanliness of, dairies likely to be or become detrimental to health or comfort and to adopt such ordinances and regulations as shall be necessary for the protection of health, and to prevent the spread of disease, and to maintain good sanitary conditions in the streets, etc. In May, 1907, the common council of the city acted under that authority by adopting its Ordinance No. 13,335, which declared that from and after its adoption it should not be lawful for any person to carry on a dairy within certain designated limits, and that all dairies then existing by virtue of any previous ordinance of the city should be removed within 10 years from the promulgation of the ordinance. By the fifth section of the ordinance it was provided that any person convicted of the violation of the ordinance should be sentenced to pay a fine of $25 and in default thereof be imprisoned for a period of 30 days.

In June, 1907, defendant was charged with a violation of this ordinance by failing to remove his dairy from within the limits designated by the ordinance. He excepted that the ordinance was illegal and unconstitutional on a number of grounds, but they were overruled, and he was convicted and sentenced. None of the grounds of complaint urged are well grounded.

*Held*, that the right and power of the city to prohibit the carrying on of dairies inside of certain limits therein, when that power is exercised in the interest of public health, is undoubted. It is to be presumed that the common council, charged by law with the determination of that question, has not acted capriciously, oppressively, or arbitrarily, but that it has acted in and for the best interests of the people of New Orleans. The proposition contended for by accused that, by reason of his having established his dairy within limits assigned at that time for dairy purposes and expended money in the improvement of the property, he has acquired a vested right to remain in that location, no matter what change in conditions may have occurred subsequently, and that the council by once fixing dairy limits had exhausted its powers over the subject-matter, is manifestly untenable. Public interest and progress cannot be tied up in that way. All property is held subject to the paramount right of the public safety and health. The general right of a person to engage in any trade, profession, or business is subject to the power inherent in the state to make all rules and regulations respecting the use and enjoyment of property rights necessary for the public health, morals, comfort, and safety, and such regulations do not deprive owners of property without due process of law. Parties who had dairies in existence at the time of the adoption of the ordinances within the prescribed limits have no legal ground to complain of discrimination, in that they have been accorded 10 years to lessen the consequences of a sudden move, while others are prohibited at once from carrying on dairies within the same limits; the discrimination, if any, being in their own favor. The ordinance itself as a whole, and as such, had effect from the date of its promulgation, the portion relative to the change of location as well as the other parts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 825; vol. 36, Municipal Corporations, § 1380.]

2. SAME—VALIDITY OF ORDINANCE.

An ordinance is not invalid because some of its provisions are to take effect in the future or upon a contingency.

(Syllabus by the Court.)

· Appeal from Recorder's Court of City of New Orleans; William E. Connelly, Recorder.

Jean Murat was convicted of violating an ordinance of the city of New Orleans, and appeals. Affirmed.

See 44 South. 279, ante, p. 505.

E. Howard McCaleb and E. Howard Mc-Caleb, Jr., for appellant. William Lee Hughes, for appellee board of health of city of New Orleans. St. Clair Adams, Asst. City Atty., for appellee city of New Orleans.

NICHOLLS, J. By Act No. 45, p. 46, of 1896, the General Assembly, referring to the city of New Orleans, enacted that:

The council shall have the power to regulate the location of, and inspection and cleansing of dairies, stables, cattle yards, landings, and pens, slaughter houses, soap, glue, tallow, and leather factories, depositories for hides, blacksmith shops, forges, foundries, laundries, oyster shops, and all places of business likely to be or become detrimental to health or comfort, and to adopt such ordinances and regulations as shall be necessary or expedient for the protection of health, and to prevent the spread of disease, and to maintain good sanitary conditions in the streets, etc.

In May, 1897, the common council of New Orleans adopted an ordinance known as "Ordinance No. 13,335, C. S." The first section of the ordinance declared:

"That from and after the adoption of this ordinance it shall not be lawful for any person to establish any dairy within the following limits: Beginning at the intersection of Protection street and the levee, out Protection street, both sides to Green street; along Green street and Bore street to South Claiborne street; along South Claiborne, south side of the New Basin Canal; along the New Basin Canal, east side, to South Hagan avenue; along South Hagan avenue to Cleveland street; along Cleveland street to Alexander street; along Alexander street to north side of Metairie Road; along north side of Metairie Road to Moss street; along Moss street to Castiglione street, and along Castiglione street to Gentilly Road,

and along Gentilly Road to river side of Lapeyrouse street; along Lapeyrouse street to the intersection of North Claiborne and St. Bernard avenues; along Clairborne avenue, both sides, to Press street; along Press street to St. Claude street; along St. Claude street, both sides, to Delery street; along Delery street to river; along river to the point beginning."

By the following sections of the ordinance it was ordained:

That all dairies now existing within the aforesaid limits, by virtue of any previous ordinances of this city hall, shall be removed within ten years from the promulgation of this ordinance. (Section 2.)

That all dairies now established, or which may hereafter be established, shall be operated and conducted in accordance with such rules governing their sanitation, construction, and maintenance as may be prescribed by the board of health and approved by the city council, which shall have full force and effect. (Section 3.)

That all ordinances or part of ordinances in conflict with the foregoing provisions be, and they are hereby, repealed. (Section 4.)

That any person, firm, or corporation violating any of the provisions of this ordinance shall, upon conviction before any recorder of competent jurisdiction, be sentenced to pay a fine of $25, and in default thereof shall be imprisoned for a period of 30 days, or both, at the discretion of the court. (Section 5.)

In June, 1907, an affidavit was filed in the Fourth recorder's court of the city of New Orleans charging that:

"On Monday, the 3d day of June, 1907, at about 10:20 o'clock a. m., at No. 2127 Valence street, in the district and city, one J. Murat did then and there violate Ordinance No. 13,335, C. S., relative to establishing the limits within which dairies can be conducted, in having failed to remove his dairy from within the limits provided in said ordinance within the time prescribed in said ordinance, all against the peace and dignity of the city of New Orleans. Wherefore deponent charges the accused with violating Ordinance No. 13,335, C. S. and prays that he be arrested and dealt with according to law."

On June 12th the accused, Murat, filed a demurrer and moved the court to quash and dismiss the complaint on the following grounds:

"Now comes Jean Murat, defendant and accused in the above-entitled cause, and moves this honorable court to quash and dismiss the complaint herein on the following grounds:

"(1) Because the affidavit, statement, and charge do not set forth facts sufficient to constitute any offense under the ordinances of the city of New Orleans.

"(2) Because said Ordinance No. 13,335, especially sections 1, 2, and 5 thereof, are unconstitutional and void, for the reason that it seeks to deprive a person of property without due process of law.

"(3) Because said sections 1, 2, and 5 thereof are unreasonable and oppressive to the citizen and the property owner.

"(4) Because said ordinance is void, there being no power or authority granted to the council of the city of New Orleans by the charter of said city to pass and enact the same.

"(5) Because said ordinance is retrospective in its nature and application, and therefore in violation of the rights of private property.

"(6) Because this appearer and accused, having established his dairy prior to the enactment of said ordinance within the limits then fixed by the city of New Orleans, has a vested right to continue to carry on his said business and to use his property as a dairy, of which he cannot be divested.

"(7) Because said sections 1, 2, and 5 are void, as being in violation of the fourteenth amendment of the Constitution of the United States: 'Nor shall any state deprive any person of life, liberty or property without due process of law.'

"(8) That said ordinance is illegal, because violative of the city charter, in this: That by its provisions a portion thereof is to go into effect from and after its adoption and other portions within 10 years from the promulgation of said ordinance, and the city council was without power or authority to postpone the execution and the taking effect of said ordinance 10 years after the promulgation thereof.

"(9) That section 1 of said ordinance is illegal, because the new limits fixed and established thereby, within which this defendant and accused is required to remove, are low, marshy, swampy lands, totally unfit for cow stables and the keeping of dairies, and are inaccessible, without roads or streets leading to the populous portions of the city wherein this defendant's customers reside.

"(10) That said ordinance is illegal, oppressive, and unreasonable, because the conducting and carrying on of the business of a dairy is not a nuisance per se, and could only become a nuisance if not constructed, kept, and used in the proper manner, as this defendant's dairy was and is.

"(11) Because, this defendant having complied with the laws and ordinances of the city of New Orleans existing at the time that he established his said dairy upon the square of ground bounded by Valence, St. David, Cadiz, and St. Patrick streets, prior to the enactment of said ordinance, he has a vested right to continue the operation and carrying on of his said dairy at said location, and the enforcement of said ordinance by his arrest and imprisonment violates his right of property and the use of said property as a dairy, without compensation.

"(12) Said ordinance is illegal, oppressive, and unreasonable, because the city of New Orleans, through its council could not arbitrarily change said limits to this defendant's injury and detriment, depriving him of his property and of the use thereof, without trial or hearing, without due process of law, by the use of the criminal proceedings provided in said ordinance, denying him protecion of the courts and the equal protection of the law provided by the Constitution of the United States, especially the fourteenth amendment thereof.

"(13) Because said ordinance is violative of article 2 of the Constitution of the state of Louisiana, which provides that no person shall be deprived of life, liberty, or property except by due process of law, and article 6, prohibiting the depriving of this appearer of adequate remedy by due process of law.

"Wherefore he prays and commands the court to quash the affidavit and complaint herein against him, that this proceeding be set aside and dismissed, and that he do go hence without date, and for costs."

This demurrer was overruled. The accused pleaded not guilty, and after trial was adjudged guilty and fined the sum of $25, or 30 days in the police jail. He has appealed.

The appeal in this case has been brought before the court under that portion of article 85 of the Constitution which declares that its appellate jurisdiction shall extend—

"to all cases in which the constitutionality or legality of any tax, toll or impost whatever, or of any fine, forfeiture or penalty imposed by a municipal corporation, shall be in contestation, whatever may be the amount thereof, and to all cases wherein an ordinance of a municipal corporation or a law of this state has been declared unconstitutional, and in such cases the appeal on the law and the facts shall be directly from the court in which the case originated to the Supreme Court."

The case does not raise any question as to the legality or constitutionality of any tax, toll, or impost, but does question the legality and constitutionality of an ordinance of

the city of New Orleans which imposes a fine and penalty.

We limit our inquiry on this appeal to an examination of the legality and constitutionality of the ordinance. We are relieved from a discussion of the question of the right, power, and authority of the common council to have dealt with the subject-matter of the ordinance under implied or general authority, for the reason that by the fourteenth section of act No. 45, p. 53, of 1896, the city of New Orleans had conferred upon it a specific grant of power to take action on such a subject. This grant was, of course, conditioned that the action of the council to be taken under it should be legal and constitutional.

Are the complaints directed against the ordinances on that score well grounded? Appellant's counsel in their brief call the court's attention to sections 1, 2, and 5 of the ordinance, contending that they are unconstitutional, in that the ordinance seeks thereby to deprive the defendant of his property without due process of law and that they are unreasonable and oppressive.

It is claimed that, accused having established his dairy within limits previously fixed, he could not now be unnecessarily or arbitrarily removed therefrom, because the limits originally fixed were intended to be permanent, not transitory and temporary, subject to constant mutation according to the whim and caprice of the council. A dairy is not in its inherent nature and character portable, nor susceptible of locomotion. It is a kind of business immovable by destination. Counsel cite in support of these propositions Berthin v. Crescent City Live Stock & Slaughter House Co., 28 La. Ann. 210; Griffin v. House, 18 Johns. (N. Y.) 397; People v. Collins, 19 Wend. (N. Y.) 56; Dobbins v. City of Los Angeles, 195 U. S. 241, 25 Sup. Ct. 18, 49 L. Ed. 169.

In the Berthin Case this court referred directly to the fact that it was called on to act in a case where the council had acted in the absence of an express power given by statute. In the other cases cited the courts were dealing with respect to power capriciously or arbitrarily exercised, in cases where the exercise of the power was subject to judicial scrutiny and control.

Conceding, arguendo, that the exercise of the common council of its power to regulate the location of streets, conferred upon it by the act of 1845, was subject to review by the courts, there is nothing before us which would warrant us in assuming or acting upon the assumption that the council had acted capriciously, arbitrarily, or oppressively in the premises. If any evidence was taken on the trial of this case, it is not before us, and we must presume that the council acted in and for the best interests of the people of the city. It does not require evidence to be brought before us to establish the fact that the location of dairies within the city limits is a matter which essentially affects the public health, not simply by reason of the manner in which the dairies are kept touching cleanliness, but also by reason of the fact that the milk of cows drinking water from wells located in inhabited portions of the city is, or may be, likely to be more or less impure.

In City of St. Louis v. M. Fischer, 164 Mo. 654, 67 S. W. 872, 64 L. R. A. 679, 99 Am. St. Rep. 614, the court said:

"Few occupations are so peculiarly liable to cause injury as the sale of impure milk to people who purchase milk as necessary articles of food."

Precisely under what circumstances that condition of things is likely to arise is left to the judgment of the municipal authorities as a matter of police regulation. The special danger of each particular dairy in that respect cannot be separately investigated. The matter has to be disposed of from a consideration of the general situation. There is

nothing before us tending to show that the ordinance complained of is prohibitory in character. Dairymen may find that exclusion from particular localities subjects them to some inconveniences and to some drawbacks; but individual interests have to yield to the public good. It comes to us as matter of common knowledge that the ordinance in question has been very generally obeyed, and that the milk business is being now carried on, though perhaps under some disadvantages, in other localities in the city.

This court, in State v. Mahner, 43 La. Ann. 496, 9 South. 480, set aside, but for special reasons assigned, an ordinance of the city of New Orleans which prohibited dairies from being carried on in a certain district of the city; but in so doing it used the following language:

"We did not consider the right or power of a city to prohibit dairies within city limits. This power is undoubted, when exercised in the interest of the public health. We distinctly asserted in the opinion that this ordinance was not enacted in the interest of public health. The permission to keep dairies within the limits, we said, negatived this view."

The right of a municipal corporation to enact ordinances necessary to secure the public health, even if such ordinances may interfere with and injure the carrying on of occupations lawful in themselves, cannot be seriously questioned. In Kennedy v. Phelps, 10 La. Ann. 227, this court said:

"The mayor and aldermen of the city of New Orleans are fully empowered to enact ordinances and adopt measures of police for preserving the public health and promoting the comfort and convenience and general welfare of its inhabitants."

The proposition, advanced by appellant, that by reason of his having established his dairy within limits assigned at one time for dairy purposes and expended money in the improvement of his property in connection therewith, he acquired a vested right to remain in that location, no matter what changes may have occurred subsequently thereto, and that after having once assigned dairy limits the municipal authorities exhausted their power and authority over the subject-matter, is so manifestly untenable as not to call for extended discussion. Public progress and public interests cannot be tied up in that way. All property is held subject to the paramount right of the public to safety and health. The general right of a person to engage in any trade and profession or business is subject to the power inherent in the state to make all rules and regulations respecting the use and enjoyment of property rights necessary for the preservation of the public health, morals, comfort, order, and safety, and such regulations do not deprive owners of property without due process of law.

The contention of appellant that the ordinance complained of is illegal and violative of the charter, because a portion of the same was to go into effect from and after its adoption, and other portions within 10 years from the promulgation thereof, and the council was without power or authority to postpone the execution and the taking effect of said ordinance for 10 years, and that the ordinance is discriminative, is without any force. If it was discrimination, it was in favor of appellant and others situated like himself, and he has no reason to complain of it. If he and others carrying on dairies at the time of the promulgation of the ordinance had been ordered to immediately change the location of the dairy, there would have doubtless been a great outcry against the harshness of the ordinance. The fact that opportunity was given to such parties during 10 years to lessen the possible evil consequences of a sudden breaking up of their establishments could certainly not give any one just cause of complaint.

The ordinance had effect as such as a whole from the date of its promulgation—the portion relative to the date of the change of location, as well as other parts. The ordinance itself was not held in abeyance for

10 years. Sutherland on Statutory Construction, § 107, declares that the power to enact laws includes the power, subject to constitutional restriction, to provide when in the future and upon what condition or event they shall take effect—citing People v. Salomon, 51 Ill. 37; New Orleans v. Holmes, 13 La. Ann. 502; Carpenter v. Montgomery, 7 Blackf. (Ind.) 415; Gorham v. Springfield, 21 Me. 58; Cooper v. Curtis, 30 Me. 488.

In City of Rushville v. Natural Gas Co., 132 Ind. 575, 28 N. E. 853, 15 L. R. A. 321, in which an ordinance was assailed upon similar grounds, the court said:

"An ordinance is not invalid because some of its provisions are to take effect in the future and upon a contingency. The rule relative to municipal ordinances is thus stated by Judge Dillon: 'Municipal ordinances, otherwise valid, may, like an act of the Legislature, be adopted to take effect in the future and upon the happening of a contingent event.'"

This subject is passed on in Heman Construction Co. v. Loevy, 64 Mo. App. 430.

We do not think that the attack on the ordinance complained of herein, upon the ground of want of legality or constitutionality, is well founded upon any of the grounds urged by appellant.

The judgment appealed from is therefore affirmed.

LAND, J., takes no part, not having heard the argument.