(46 South. 911.)

No. 16,967.

CITY OF NEW ORLEANS v. CHAROULEAU.

(June 22, 1908. Rehearing Denied June 30, 1908.)

1. ANIMALS — POWERS OF CITY — DISEASED COWS—REGULATION OF DAIRIES.

Power "to maintain the city's cleanliness and health, and to this end to regulate the location of, and the inspection and cleaning of, dairies, * * * and to adopt such ordinances and regulations as shall be necessary or expedient for the protection of health and to prevent the spread of disease," is a plenary delegation of police power in connection with the police of dairies, and invests the city council with all the authority which the state itself is possessed of to require dairy cows in a large city to be inspected, and, if found to be affected with tuberculosis, to be destroyed, without compensation to the owner.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Animals, § 82.]

2. SAME—DESTRUCTION WITHOUT COMPENSATION.

It being shown that tuberculosis in a cow may be ascertained by a practically infallible test, and it being further shown that the presence of a cow so affected in a dairy in a city is a serious menace to the public health, the public authorities have the same right to require the destruction of such cow without compensation to the owner and without judicial inquiry as they have to require the destruction of decayed fish, meats, and vegetables.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Animals, § 82.]

3. MUNICIPAL CORPORATIONS — EXERCISE OF POLICE POWERS.

The city council may exercise its police power through the agency of boards or inspectors.

(Syllabus by the Court.)

Appeal from Fifth Recorder's Court, City of New Orleans; Fred. Deibel, Recorder.

N. Charouleau was convicted of violating a city ordinance, and appeals. Affirmed.

Henriques & Dunn, for appellant. William Lee Hughes, for appellee board of health of city of New Orleans.

PROVOSTY, J. Ordinance No. 16,204 (C. S.) § 14, provides as follows:

"No cow shall be used in any dairy or dairy farm unless the same shall have undergone the tuberculin test or which is known to be suffering from tuberculosis, splenic fever, anthrax, or any local or general disease which is liable to render the milk from said cow unwholesome, and every person keeping a milch cow for dairy purposes shall permit it to be examined, without cost to the owner, from time to time, as to its freedom from disease, by a veterinarian designated by the health authority, nor shall any cow be brought into and sold within the city of New Orleans for dairy purposes, and no milk therefrom sold unless said cow shall have passed the required inspection by the local health authority and subjected to the tuberculin test. Nothing in this section contained shall be construed as preventing the sale of any milch cow brought to the city for sale, but no milk from such cow shall be sold until said cow shall have passed the required inspection.

"All cows found on examination by the veterinarian designated by the health authority, to be free from disease, shall be tagged and registered with said health authority, and it shall be unlawful to remove said tag or put it on any other cow, nor shall any cow so tagged be removed from any dairy or dairy farm unless the dairyman or owner notify the health authority of said removal and designation, where it shall be again registered and held subject to the regulations herein provided. All cows found to be suffering from disease liable to render the milk from said cow unwholesome shall be at once removed from the herd and isolated, and shall not be again used for milch purposes until cured, or if said disease be incurable or tuberculosis, shall be at once taken to the slaughtering pens and there slaughtered and its carcass destroyed under the supervision of the health authority."

Defendant refused to permit the veterinarian of the board of health to administer the tuberculin test for tuberculosis to one of his cows for ascertaining whether it was affected with the disease, and was prosecuted and convicted under this ordinance, and has appealed.

His first contention is that the said ordinance is null, because the city council had no authority to pass it. The provision of the city charter under which the ordinance was passed reads as follows:

"The council shall have the power * * * to maintain its [the city's] cleanliness and health, and to this end * * *

"(c) To regulate the location of, and inspection and cleansing of, dairies, stables, cattle-yards, landings and pens, slaughter houses, soap, glue, tallow and leather factories, depositories for hides, and all places of business likely to be or become detrimental to health, and to adopt such ordinances and regulations as shall be necessary or expedient for the protection of health and to prevent the spread of disease, and to maintain a good sanitary condition in the streets, public places and buildings, and on all private premises. The common council shall provide for the frequent inspection of all premises by persons to be designated, either by the common council or by the board of health in the city. They shall also prescribe what water supply shall be provided by the owners of private premises, and that all premises, yards, streets and alleys shall be kept in a cleanly condition; shall provide for the punishment of any violation of such ordinances or regulation, by fine or imprisonment, or both; and all such fines, when recovered, shall be paid over to the board of health to assist in its maintenance.

"(e) To prevent the sale of adulterated or decayed food, and punish the same; to punish the sale of adulterated drinks."

We think that, for the purposes specified in the ordinance, the plenary police power has been delegated by this statute to the city council.

Defendant's next objection is that the ordinance authorizes the taking of property without due process of law, in that no compensation is required to be made to the owner of the cows which are to be destroyed as being affected with tuberculosis.

This same question was carefully considered by the Supreme Court of Wisconsin in the case of Houston v. State, 42 L. R. A. 39, where the right under the police power to destroy without compensation to the owner dairy cows found to be affected with tuberculosis was sustained; the court saying:

"It is fairly established, by adjudications too numerous to mention, that a state may, in the proper exercise of its police power, authorize the destruction of such property as has become a public nuisance, or has an unlawful existence, or is obnoxious to the public health, public morals, or public safety, without compensation, notwithstanding that prohibition in section 1, art. 14, of the amendments to the Constitution of the United States. Bittenhaus v. Johnson, 92 Wis. 588, 66 N. W. 805, 32 L. R. A. 380; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346, 2 Inters. Com. Rep. 232; Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813, affirmed in 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385."

Recently, in this court, an ordinance changing dairy limits, the effect of which was to deprive dairymen of their property without compensation, was sustained as a valid exercise of police power. City of New Orleans v. Murat, 119 La. 1093, 44 South. 898.

Defendant next contends that, even if the city council has this power, it cannot delegate the exercise of it to the board of health. But it is the invariable custom to delegate such authority to a board or other functionary, and the authority to do so is well recognized. Fischer v. St. Louis, 194 U. S. 361, 24 Sup. Ct. 673, 48 L. Ed. 1018.

Defendant next contends that dairy cows affected with tuberculosis are not so serious a menace to the public health as to render them fit subjects for this extreme exercise of the police power. Here defendant raises a question of fact, which can be settled only by the expert evidence in the case; and the evidence is all to the contrary of defendant's present contention.

Defendant next argues that he must be afforded a judicial hearing before his property can be condemned. Here, again, the question is more one of fact than of law. Would it be practical in a large city to institute a judicial inquiry in the case of every diseased cow in every dairy? Impure food, decayed fish, meats, and vegetables, are subjected to the doom of the inspector, without appeal. We see no reason why in a large city the same should not be done with dairy cows, which by a test recognized to be practically infallible are found to be a serious menace to the public health.

Dr. P. F. Archinard, the distinguished bacteriologist, testifying in the case as an expert, says:

"A tuberculous cow is not only liable to produce tuberculosis or tubercular milk, but it can give tuberculosis to the other cows in the dairy if they come in contact with its excretions. By that I mean its breathing, passages, or urine. Any one of these is liable to be contaminated with tubercular germs, and they dry easy, and while they are dry they are not dead. They live for years. After drying they live for an indefinite length of time, for all we know, and the slightest wind blows them about. The milk in the dairy is liable to become infected with the germs."

Judgment affirmed.

BREAUX, C. J., concurs.