**111 P.2d 41**

### MITCHELL et al. v. CITY OF ROSWELL.

### No. 4575.

Supreme Court of New Mexico.

Feb. 18, 1941.

E. L. Medler and Ove E. Overson, both of Hot Springs, for appellants.

Atwood & Malone, of Roswell, for appellee.

BRICE, Chief Justice.

This action was brought by appellants (plaintiffs below) under authority of Ch. 143, L.1935, known as the Declaratory Judgment Act, to have declared the rights of the parties regarding the subject matter of this suit. A demurrer to the complaint was sustained by the trial court and, the plaintiffs having refused to amend, judgment was entered dismissing the case. The question is whether the complaint states a cause of action.

The facts alleged are substantially as follows:

In the month of May, 1936, the plaintiff Joe Mitchell became the owner of certain real property in the City of Roswell and within the restricted district hereinafter mentioned, of the value of $2,500, and now of the value of $3,500. Plaintiffs Joe Mitchell & Sons were engaged in the business of importing high-grade Hereford bulls and livestock from the state of Texas into New Mexico for sale in the City of Roswell, and for this purpose operated and maintained said premises as a "Hereford Bull Sale Stable." Such business was conducted under authority and permit of the New Mexico Cattle Sanitary Board. In the regular course of business, and pending the sale of bulls and other livestock, the animals were kept for the purpose of sale only, in a large barn on said premises, or in a corral adjoining it. In conducting the business the plaintiffs paid the City of Roswell occupation taxes for the years of 1938 and 1939.

The premises were kept in a clean and sanitary condition, free of filth, manure, offal, urine or other materials which might give off offensive smells or odors. Gravel one foot in depth was placed upon the yard or corral so that no mud or mire could accumulate.

The improvements on said property, consisting of a barn, feed and watering troughs and corrals, adapted to, and built for the purpose of maintaining a business of the character conducted by plaintiffs, are practically valueless for any other purpose.

On the 2d day of May, 1939, after the plaintiffs had been conducting said business

from May 1936 to May 1939, the defendant passed Ordinance No. 569, containing the following preamble:

"Whereas, the keeping or confinement of one or more horses, mules, burros, cows, goats, sheep, swine or other livestock within the thickly populated residential and business sections of the City of Roswell constitutes an offensive and unwholesome establishment, detrimental to the health and general welfare of the residents of the City of Roswell, and creates an unsanitary condition not conducive to the suppression of diseases, and

"Whereas, the City Council of the City of Roswell, New Mexico, has determined that the sections of said City hereinafter enumerated, which shall be referred to as the Restricted Area, are generally used for business or residential purposes and are situated and populated to the extent that the keeping of such livestock is deleterious to the health and general welfare of the City, and

"Whereas, the City Council of the City of Roswell, New Mexico, has determined that by reason of the heavy traffic upon State and Federal highways within the City limits of the City of Roswell, the confinement or tethering of livestock within seventy-five feet of any such State or Federal highway constitutes a menace to the passage of traffic upon such highway and endangers the welfare of persons traveling thereon."

The material part of the Ordinance involved in this appeal is as follows:

Sec. 1: "From and after the 1st day of June, 1939, it shall be unlawful for any person to keep, cause, or permit to be kept, or to confine one or more horses, mules, burros, cows, goats, sheep, swine or other livestock at any place within the boundaries of the Restricted Area of the City of Roswell as hereinafter defined.

Sec. II: "That the Restricted Area of the said City of Roswell within which the keeping or confinement of livestock is hereby prohibited shall be that portion of the City of Roswell within the following boundaries, to-wit:

"Beginning at the center of the intersection of Main Street and Twelfth Street within the City of Roswell; thence west to the center of Lea Avenue; thence South to North Spring River; then in a westerly direction along North Spring River to the center of Union Avenue; thence south to the intersection of Union Avenue and Albuquerque Street to the intersection of said street with Virginia Avenue; thence north along the center of Virginia Avenue to North Spring River; thence in a westerly direction along North Spring River to the center of Main Street; thence North on Main Street to the point of beginning."

The zone or district in which the keeping of animals and livestock is prohibited comprises practically all of the business section and most of the residential section of the City of Roswell.

Section III of the Ordinance is as follows: "From and after the 1st day of June, 1939, it shall be unlawful for any per-

son to confine one or more horses, mules, burros, cows, goats, sheep, swine or other livestock in any enclosure situate within seventy-five feet of any State or Federal Highway within the limits of the City of Roswell, or to tether such animal within seventy-five feet of such State or Federal Highway."

Section IV provides for a penalty for the violation of the Ordinance and Section V recites, "Nothing in this Ordinance shall be construed as regulating or prohibiting the keeping or confining of dogs or cats." Section VI repeals all Ordinances in conflict, while section VII provides that should any part of the ordinance be declared unconstitutional, the remainder of said ordinance not so affected shall remain in force.

After the passage of this Ordinance May 2, 1939, the City Sanitary Inspector of Roswell notified the plaintiffs in writing to move their Hereford Bulls and livestock from the premises and out of said zone and district, and to cease and further desist from the operation of their said business.

Plaintiffs, upon order from defendant, and under protest, removed their livestock from said premises in June, 1939, and since have not conducted their business thereon; during which time their property has remained vacant and they have been deprived of its use for said business, in the operation of which they made large profits.

Said business is not operated in the residential part of the city, or in its main business district, but in what might be termed its "semiindustrial district," and is more than seventy-five feet from any federal or state highway; but is within the restricted district of said ordinance.

It is contended first that the ordinance is unreasonable, contrary to the general public policy of the State of New Mexico, and is discriminatory.

Contrary to the assertion of appellee, we do not find any statute expressly granting to municipalities authority to enact Ordinance 569. If there is such authority it must be found within the general powers granted by the following paragraphs of Sec. 90-402, N.M.Sts.1929:

(45) "To declare what shall be a nuisance and to abate the same, and to impose fines upon parties who may create, continue or suffer nuisances to exist."

(48) "To do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease."

(53) "To prohibit any offensive and unwholesome business or establishment within, or within one mile of, the limits of the corporation.",

And "Municipal corporations shall have power to make and publish, from time to time, ordinances not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by law, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporation and

the inhabitants thereof." Sec. 90-901, N.M. Sts.1929.

 The fact that plaintiffs' improvements were especially built for, and adapted to, business of the character conducted by him, and that he will suffer a financial loss if he is prevented from so using them, are not alone grounds for holding the ordinance void under any provision of the Federal or State Constitutions.

 All property and property rights are held subject to the fair exercise of the police power (3 McQuillin, 2d Ed., § 939); and a reasonable regulation enacted for the benefit of the public health, convenience, safety or general welfare is not an unconstitutional taking of property in violation of the contract clause, the due process clause, or the equal protection clause of the Federal Constitution. Article 1, § 10; Amend. 14. Atlantic Coast Line Ry. Co. v. Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721. A vested interest in property cannot be asserted against it upon the theory that the business was established before the statute or ordinance was passed. When the power is authorized and reasonably enforced, it matters not that the investment in property, as it is alleged here, was made prior to the passing of the ordinance, or that the value of the property was reduced materially by reason thereof; or that the property is not so useful or valuable for any other purpose. The private interests of the individual are subordinated to the superior interest of the public. Reinman v. Little Rock, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 900; City of Little Rock v. Reinman-Wolfort Automobile Livery Co., 107 Ark. 174, 155 S.W. 105; Ex parte Hadacheck, 165 Cal. 416, 132 P. 584, L.R.A. 1916B, 1248; Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann. Cas.1917B, 927; Barbier v. Connolly, 113 U.S. 27, 31, 5 S.Ct. 357, 28 L.Ed. 923, 924; Sec. 14 of Art. 11, Const. of New Mexico.

If the ordinance in question had for its sole purpose the regulation of stables and cattle pens, such as those owned by plaintiffs, the authority to enact it could not be doubted. Reinman v. Little Rock, supra; Fischer v. St. Louis, 194 U.S. 361, 24 S.Ct. 673, 48 L.Ed. 1018; Town of Colton v. South Dakota, Etc., Co., 25 S.D. 309, 126 N.W. 507, 28 L.R.A.,N.S., 122; New Orleans v. Murat, 119 La. 1093, 44 So. 898. But it prohibits the keeping of any cow, horse, jack, burro, sheep, goat or swine, in a designated part of the City of Roswell, which, it is said, is an unreasonable exercise of the police power.

 It is the policy of the courts to uphold regulations intended to protect the public health, unless it is plain that they have no real relation to the object for which ostensibly they were enacted, and prima facie they are reasonable. Miller v. Syracuse, 168 Ind. 230, 80 N.E. 411, 8 L.R. A.,N.S., 471, 120 Am.St.Rep. 366; Odd Fellows' Cemetery Ass'n v. San Francisco, 140 Cal. 226, 233, 73 P. 987, 989; Boyd v. City of Sierra Madre, 41 Cal.App. 520, 183 P. 230.

The plaintiffs must overcome the findings of the city governing board, stated in the preamble to the ordinance, that the keeping of such animals within the restricted district was a nuisance and endangered the public health. These findings and the enactment of the ordinance, established prima facie that it was reasonable, and burdened plaintiffs with the necessity of disproving it. Shaw v. Stoeltzing, 180 Mo. App. 113, 167 S.W. 1158; People v. Gibbs, 186 Mich. 127, 152 N.W. 1053, Ann.Cas. 1917B, 830; Hislop v. City of Joplin, 250 Mo. 588, 157 S.W. 625; Chicago & A. R. Co. v. Carlinville, 200 Ill. 314, 65 N.E. 730, 60 L.R.A. 391, 93 Am.St.Rep. 190; Ex parte Quong Wo, 161 Cal. 220, 118 P. 714.

For the facts we are dependent upon the allegations in the complaint, the substance of which we have recited. General statements of law and fact therein do not sustain the burden imposed upon plaintiffs to prove the unreasonableness of the ordinance, and numerous statements of this character therein cannot be considered. Specific facts must be proved from which it may be inferred that the ordinance is unreasonable. Public Service Co. v. Great Northern Utility Co., 289 U.S. 130, 53 S. Ct. 546, 77 L.Ed. 1080; Aetna Life Ins. Co. v. Hyde, 275 U.S. 440, 48 S.Ct. 174, 72 L. Ed. 857.

We would be reluctant to disagree with Roswell's local authority (primarily the judge of the matter) regarding the reasonableness of its public health regulations, and will not do so unless it is plain and palpable that there is no real or substantial relation between the ordinance and its object. Cusack Co. v. Chicago, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472, L.R.A.1918A, 136, Ann.Cas.1917C, 594. The courts have not attempted to precisely define the limits of the police power; but rest their decisions upon the facts of each case. The tendency is to uphold such ordinances.

The fact that plaintiffs' stable and lot were kept clean and sanitary is no ground for holding the ordinance invalid, as others similarly situated might not be so careful of the public health. The ordinance was passed to take care of conditions that might, or probably would, exist if not enacted.

It is generally held that the keeping of hogs within a city may be prohibited. Smith v. Collier, 118 Ga. 306, 45 S.E. 417; State ex rel Cedar Rapids v. Holcomb, 68 Iowa 107, 26 N.W. 33, 56 Am.Rep. 853, Quincy v. Kennard, 151 Mass. 563, 24 N.E. 860; State v. Rice, 158 N.C. 635, 74 S.E. 582, 39 L.R.A.,N.S., 266; Town of Darlington v. Ward, 48 S.C. 570, 26 S.E. 906, 38 L.R.A. 326; Ex parte Botts, 69 Tex.Cr.R. 161, 154 S.W. 221, 44 L.R.A.,N.S., 629; Ex parte Glass, 49 Tex.Cr.R. 87, 90 S.W. 1108; State v. Hord, 122 N.C. 1092, 29 S.E. 952, 65 Am.St. Rep. 743; In re Linehan, 72 Cal. 114, 13 P. 170; Johnson v. Drysdale, 66 S.D. 436, 285 N.W. 301; but there are cases to the contrary; Comfort v. Kosciusko, 88 Miss. 611, 41 So. 268, 9 Ann.Cas. 178; Ex

parte O'Leary, 65 Miss. 80, 3 So. 144, 7 Am.St.Rep. 640.

There are numerous cases in which ordinances regulating the keeping of cattle within cities have been upheld, the principal one being Fischer v. City of St. Louis, supra, affirming a decision of the Supreme Court of Missouri, 167 Mo. 654, 67 S.W. 872, 64 L.R.A. 679, 99 Am.St.Rep. 614, upholding an ordinance prohibiting the erection of cow stables or dairies, within the prescribed limits of the City of St. Louis without a permit. The Supreme Court of the United States said [194 U.S. 361, 24 S.Ct. 675, 48 L.Ed. 1018]: "The power of the legislature to authorize its municipalities to regulate and suppress all such places or occupations as, in its judgment, are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood by loud noises or offensive odors, is so clearly within the police power as to be no longer open to question. The keeping of swine and cattle within the city or designated limits of the city has been declared in a number of cases to be within the police power. The keeping of cow stables and dairies is not only likely to be offensive to neighbors, but it is too often made an excuse for the supply of impure milk from cows which are fed upon unhealthful food, such as the refuse from distilleries, etc."

The Supreme Court of California in Ex parte Mathews, 191 Cal. 35, 214 P. 981, upheld an ordinance of the City of Pasadena, which limited the number of goats that could be kept by one person within the city; and the Supreme Court of Tennessee, in Town of Jonesboro v. Kincheloe, 148 Tenn. 688, 257 S.W. 418, 419, 32 A.L.R. 1367, upheld the authority of the town of Jonesboro in prohibiting the keeping of calves overnight within the corporate limit "in such manner as that residents of the town will be disturbed by their noises." See annotation to this case in 32 A.L.R. at page 1372, entitled "Validity of Municipal Ordinances Prohibiting or Regulating the Keeping of Livestock."

The only case directly in point is State v. Stowe, 190 N.C. 79, 128 S.E. 481, 40 A.L.R. 559, in which such an ordinance was upheld, but not without a vigorous dissent by Justice Clarkson.

The immense strides made by modern medical research, and the practical application of its discoveries to living conditions by sanitary practices, have prolonged life and promoted the healthfulness of the people, and particularly that of urban populations. We judicially know that any of the animals proscribed, even under the best conditions, will be unsanitary and attract flies, and that flies are carriers of diseases. Roswell is a city of some 13,000 population. It may be that the horse is no longer a necessary means of transportation therein, and that sanitary dairies sell and deliver milk at reasonable prices to its inhabitants, as is ordinarily the case in the larger cities and towns; and that the other animals named

in the ordinance are equally as unnecessary to the welfare of the people of that city.

We do not hold that a like ordinance would not, because of local conditions and mode of living, be unreasonable and oppressive if enforced in some municipalities, particularly the smaller ones; but no such conditions are shown to exist in Roswell.

In the absence of facts showing otherwise (as in this case) we will assume that conditions in that city are such (as they may well be) that the ordinance is not an unreasonable exercise of the police power.'

There is no discrimination against the plaintiffs, and we are advised of no public policy of the state that would justify our interference.

 It is alleged that plaintiffs paid an occupation tax authorizing them to pursue their business within the City of Roswell for the year of 1939, and, therefore, the ordinance was inoperative as to them. But the year of 1939 had expired before this suit was filed. In any event the City of Roswell could not bargain away its police power for license fees. Cities are organized and business licensed therein, with the understanding that the health of the people must be preserved, and this power cannot be divested by any act of the municipality. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205; Stone v. Mississippi, 101 U.S. 814, 816, 25 L.Ed. 1079; LaCrosse Rendering Works v. LaCrosse, 231 Wis. 438, 285 N.W. 393, 124 A.L.R. 511, and annotations beginning at page 523.

Finally, it is asserted that the general welfare statutes we have quoted, in so far as they have application to the public health, were, by implication, repealed by the enactment of Ch. 39, L. 1937, a comprehensive act relating to the advancement of the public health and the granting of certain police powers to the State Board of Public Health, etc.

 Unless there is a clear conflict between that act and the statutes mentioned, so that the exercise of the police powers granted to municipalities was transferred to the State Board of Health to be by it exclusively exercised, there was no repeal by implication. We have examined the health act and we do not find any such implication, or any reason for holding that the police powers under consideration cannot exist concurrently with the powers granted to the State Board of Health. Thomas v. Mason, 39 W.Va. 526, 20 S.E. 580, 26 L.R.A. 727; State ex rel. McBride, v. Superior Court, 103 Wash. 409, 174 P. 973; State (Nicoulin) v. Lowery, 49 N. J.L. 391, 8 A. 513; 43 C.J. "Municipal Corporations" Sec. 207.

It is asserted by appellants that the following powers granted (among others) to the State Board of Public Health, confer exclusive jurisdiction of all matters regarding the public health upon that board, to-wit:

"(1) Supervise the health of the people of the state.

"(2) Investigate, control and abate the causes of diseases, especially epidemics,

sources of mortality and effects of localities, employment and other conditions of public health.

"(3) Inspect * * * premises and industries and to regulate the sanitation thereof in the interest of public health. * * *

"(7) Abate nuisances endangering the public health. * * *

"(10) Cooperate with the health agencies of the Federal Government and other health agencies in carrying out measures for the protection of public health. * * *

"(19) Establish, maintain and enforce such rules and regulations as may be necessary to carry out the intent of this act and to publish same." Sec. 4 of Ch. 39, L. 1937.

The "New Mexico Department of Public Health" is a public corporation, and is an agency of the State, whose limited powers are vested in a board designated as "The State Board of Public Health," a director of public health and other authorized officers and employees. It may make rules, regulations, and orders, that have general application throughout the State, those of a general or special character having local application only, and those that apply only to particular cases. It has the power to "abate the causes of diseases" and "nuisances endangering the public health". It is not given the power "to declare what shall be a nuisance and to abate the same."

But assuming for the purposes of this case, that it had jurisdiction to provide by order the prohibitions contained in the ordinance in question, the effect would be that two tribunals possessed jurisdiction over the same subject matter, a not unusual circumstance in jurisprudence. Municipalities may be granted authority to punish by ordinance affrays, assaults, the sale of intoxicating liquors and other acts that at the same time are crimes against the state. There is no conflict of jurisdiction and the offenses are distinct. There may be a violation of a city ordinance and at the same time a violation of an order of the Board of Public Health resulting from one act. The ordinance does not interfere with any function of the Board of Health, and the city has not been shorn of any of its jurisdiction under the general welfare statutes.

Other questions are raised, but are palpably without merit.

The judgment of the district court should be affirmed, and it is so ordered.

ZINN, SADLER, MABRY, and BICKLEY, JJ., concur.